UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                    CRIMINAL NO. 15-cr-20126

               Plaintiff,                    HON. ARTHUR J. TARNOW

v.

D-1 FADI HAMMOUD,

               Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorneys, Daniel L. Lemisch, Acting United States Attorney, and Frances Lee Carlson, Assistant United States Attorney, submits that for the reasons provided below, a sentence of 37 months' imprisonment, is sufficient but not greater than necessary to achieve the purposes set forth in 18 U.S.C. § 3553(a)(2).

## I.    FACTUAL AND PROCEDURAL HISTORY

### A.    Plea

On January 5, 2017, the defendant pled guilty pursuant to a plea agreement to one count of bank fraud, in violation of 18 U.S.C. § 1344. Hammoud's guilty plea arises from his execution of both a fraudulent short sale scheme and a

fraudulent insurance fraud scheme involving his primary residence. The plea

agreement recommended the guideline range to be 33 to 41 months, based on a

total offense level of 20 and a criminal history category of I.

### B.   Nature of the Offense

In early July 2011, Wells Fargo Bank notified defendant Hammoud that he

was in default on the mortgage for his residence located at 7601 Miller Road,

Dearborn, Michigan. This was Hammoud's primary residence. The balance of the

mortgage was $342,000. [1] Shortly after receiving the default letter, Hammoud

began negotiating a short sale of his home with Wells Fargo. Unbeknownst to

Wells Fargo, the defendant recruited his friend, Billy Mukhal, to purchase 7601

Miller Road. Over the next year, Hammoud, posing both as the listing agent

(George Ghanam) and broker (Mariam Bazzi), faxed various short sale packages to

Wells Fargo, attempting to gain their approval for the short sale. The documents

Hammoud sent in these short sale packages contained fraudulent proof of funds for

proposed buyer Billy Mukhal. The proof of funds (to show that Mukhal could

afford to purchase the house) were in the form of fake Comerica Bank statements.

Both Comerica Bank and Mukhal have confirmed that the statements were either

invalid or did not belong to Mukhal. Indeed, in some of the statements, the account

---

[1] In 2008, National City Bank issued HAMMOUD a home equity line of credit of $80,000. National City Bank obtained credit default insurance from United Guaranty Residential Insurance Company.

number reflected on the first page differed from the account number reflected on the remaining pages. Also included in the final short sale package was a Short Sale Affidavit that Hammoud signed and submitted.

On June 13, 2012, Wells Fargo finally approved the defendant's short sale to Mukhal for $226,000. Wells Fargo's approval, however was based on several material misrepresentations made by Hammoud in order to induce Wells Fargo to approve the short sale. Among other things, the defendant verified in the Short Sale Affidavit that: (1) the sale was an arm's length transactions between parties who were unrelated by commercial enterprise; (2) there were no agreements, understandings or contracts between the parties that Hammoud would remain in the house; and (3) there were no agreements, understandings, or contracts relating to the current or subsequent sale of the house. In truth, Hammoud recruited Mukhal to put the house in Mukhal's name for several months at which time Mukhal would deed the house back to him. They also had an agreement that Hammoud would continue to live in the house. Also, unbeknownst to Wells Fargo, Hammoud provided all of the funds for Mukhal to purchase the house. The defendant had borrowed the majority of the funds for closing from Satori Corporation, a private money lender. The closing took place on August 2, 2012. During the closing, Hammoud executed another Short Sale Affidavit where he made the same material misrepresentations as he did in the June 6, 2012 Affidavit. The fraudulent short

3

sale resulted in a loss of approximately $153,269.71 to Wells Fargo. The

defendant's fraud also resulted in a loss of $76,432.27 to United Guaranty

Residential Insurance Company.

Shortly after the sale to Mukhal, the defendant obtained homeowner's

insurance in Mukhal's name for 7601 Miller, without Mukhal's knowledge. In

January 2013, a pipe burst and Hammoud, posing as Mukhal without Mukhal's

knowledge, initiated an insurance claim with Grange Insurance for the damage

caused by the burst pipe. Hammoud, acting as Mukhal, filed several claims for

repairs, replacement of objects, cleaning, and 4 months' rent/security deposit for an

alternative residence. The claim based on the alternative residence was fraudulent.

Hammoud provided a fake lease to Grange in support of this claim. As a result,

Grange Insurance paid approximately $337,748.46 in insurance claims. The checks

were mailed to the Miller address and subsequently cashed by Hammoud who used

a large portion of the money to make the large balloon payment (due in February

2013) to the private money lender who funded the short sale to Mukhal.

Hammoud's fraud resulted in a loss of $342,143.13 to Grange Insurance.


## II.    SENTENCING GUIDELINE CALCULATIONS

As reflected in the plea agreement, the parties anticipated a guideline range

of 33 to 41 months based on a total offense level of 20 and a criminal history

category of I. The probation department calculated a guideline range of 37 to 46 months. The difference in calculation is because the probation department discovered an additional criminal history point which increased Hammoud's criminal history category from I to II. (PSR ¶¶ 32, 60). The government agrees with probation's calculation of the defendant's criminal history category.

The plea agreement provides that if the Court finds that the defendant's criminal history category is higher than what is reflected in the plea agreement and results in a higher guideline range, then "the higher guideline range becomes the agreed upon range." (Plea Agreement, p. 4). Accordingly, Hammoud's guideline range should be calculated using criminal history category II.

## III.    SECTION 3553(a) SENTENCING FACTORS

In determining the appropriate sentence, the Court should not simply rely on the Guideline calculations, but should consider all of the factors in the Sentencing Reform Act and, in particular, those set forth in 18 U.S.C. § 3553(a).  These factors include (i) the nature and circumstances of the offense, and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, and (iii) the need for the sentence imposed to afford adequate deterrence to criminal conduct.

In this case, a guideline sentence is warranted and the government recommends a sentence of 37 months, which is at the bottom of the newly calculated guideline range.

### A.    History and Characteristics of Defendant Hammoud

The defendant owned a real estate company for 12 years. (PSR ¶ 54.) In addition, the defendant reported that he graduated from Fordson High School. Given the defendant's knowledge of the real estate industry, he made a well-informed decision to commit bank fraud and insurance fraud for his financial benefit.

### B.    Seriousness of the Offense, Promoting Respect for the Law, Providing Just Punishment, and Affording Adequate Deterrence

The defendant's criminal activities occurred over the course of 17 months and resulted in more than half a million dollars in losses to his victims. This was not a crime resulting from a single decision or a momentary impulse. This was a calculated crime that was committed over a significant period of time in which the defendant used several fake identities and documents in order to fraudulently get what he wanted. In order to perpetuate his criminal activity, multiple discrete acts and decisions were required. And, based on his wealth of experience in the business of real estate as noted above, defendant Hammoud certainly knew the criminal nature of his conduct.

This is why white-collar crime is so serious. It is the essence of an intentional crime. It is orchestrated. It is coordinated and planned. It is methodical. As is the case here, it is not a crime generally motivated by the need to feed a family, but rather driven by the greed to maintain his lifestyle.

In prosecutions such as this, the sentence imposed is important to promote respect for the law and to deter the defendant and the general public from committing similar crimes in the future. Given the difficulties of uncovering and prosecuting this type of fraud, the deterrent impact of a prison sentence is important to the mission of law enforcement and the financial integrity of financial institution and the insurance industry. The Eleventh Circuit emphasized the important role that prison sentences have in deterring economic-based crimes in *United States v. Martin* when it recognized that "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." 455 F.3d 1227, 1240 (11th Cir. 2006) (internal citations omitted).

With this in mind, a sentence of imprisonment of 37 months is necessary. Such a sentence would serve to adequately punish the defendant for his methodical, thoughtful, and sophisticated criminal conduct that spanned over 17 months and caused over $500,000 in losses.  In addition, this sentence would deter

the defendant and others from future criminal conduct and, in particular, economic crime.

## CONCLUSION

For all of the above reasons, the government respectfully recommends that the Court impose a sentence of 37 months in prison—a sentence within the Guidelines range as calculated by the U.S. probation department.

Respectfully submitted,

DANIEL L. LEMISCH
Acting United States Attorney

*s/Frances Lee Carlson*
FRANCES LEE CARLSON
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
313-226-9100
frances.carlson@usdoj.gov

Dated: May 11, 2017

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2017, I electronically filed the foregoing

document with the Clerk of the Court using the ECF system, which will send

notification of such filing to the following:

James C. Thomas
Attorney for Fadi Hammoud

*s/Frances Lee Carlson*
FRANCES LEE CARLSON
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
313-226-9100
frances.carlson@usdoj.gov

Dated: May 11, 2017