UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                                CASE NO. 15-CR-20126-001

vs.                                     HON. ARTHUR J. TARNOW

FADI HASSAN HAMMOUD,

      Defendant.
_____/

**<u>DEFENDANT, FADI HASSAN HAMMOUD'S,
SENTENCING MEMORANDUM</u>**

NOW COMES, Defendant, FADI HASSAN HAMMOUD, by and through his counsel, James C. Thomas of JAMES C. THOMAS, P.C., and files the following Sentencing Memorandum setting forth all factors that this Honorable Court should consider in determining the type and length of sentence for Fadi Hassan Hammoud ("Mr. Hammoud"), and requesting a downward variance from the sentencing guidelines.

**I. COMPUTATION OF GUIDELINES**

On March 5, 2015, Mr. Hammoud was named in a five-count Indictment charging Count 1: Bank Fraud in violation of 18 USC § 1344. Count II through Count IV: Mail Fraud in violation of 18 USC § 1341 and Count V: Aggravated Identity Theft in violation of 18 USC § 1028A(a)(i). The Indictment also included forfeiture allegations, pursuant to 18 USC § 981(a)(1)(C) and 28 USC § 2461(c). The offenses were alleged to have occurred

between August 2011 through March 2013. On January 5, 2017 Mr. Hammoud entered a plea of guilty to Count 1 of the Indictment pursuant to a Rule 11 Plea Agreement.

The guidelines for violation of 18 USC § 1344 offenses are found in USSG § 2B1.1(a)(1) requiring a base offense level of 7. Mr. Hammoud received a fourteen-level increase pursuant to USSG § 2B1.1(b)(1)(H), because the loss in this offense was in excess of $550,000.00. Additionally, he received a two-level increase pursuant to USSG § 2B1.1(b)(11)(A)(ii) because the offense involved an authentication feature.

Mr. Hammoud received a three-level total reduction for acceptance of responsibility pursuant to USSG §§ 3E1.1(a) and (b). As a result, Mr. Hammoud's Total Offense Level is 20. Based upon a criminal history score of two, he has a criminal history category of II his advisory guidelines range is calculated to be 37 to 46 months. Defendant's correct criminal history increases the guidelines range contemplated in the Rule 11 from 33 to 41 to 37 to 46. While it is believed that Defendant's misdemeanor history overstates his criminality, there are no disputes regarding the calculation of the guidelines range in the Rule 11 Plea Agreement or in the report by Probation.

## II. RULE 11 PLEA AGREEMENT

On January 5, 2015, Mr. Hammoud entered a plea of guilty pursuant to a Rule 11 Plea Agreement. Mr. and Mrs. Hammoud have agreed to fund the restitution amount partially by a repurchase of his home at 7601 Miller Road for $234,000.00. In this way the familial home will be exempted from forfeiture/restitution. Towards that end, the details

are near completed and the Court will be advised at the time of the sentencing regarding this issue.

### III. REQUEST FOR DOWNWARD VARIANCE FROM ADVISORY GUIDELINES

Until 2005, a defendant was precluded from arguing a variance outside the express terms of a Rule 11 Plea Agreement. <u>United States v. Williams</u>, 510 E.3d 416, 435 (3rd. Cir. 2007).  That is not true today.  Upon review of the United States Sentencing Guidelines Commission statistics, both nationally and for the Eastern District of Michigan, it appears as if judges have been more willing to exercise their discretion and vary from the guidelines to impose a sentence below the recommended guidelines.  We ask this Honorable Court to do so here.

Counsel submits that a term of incarceration under the particular facts and circumstances of this case is greater than necessary to achieve the stated goals of sentencing 18 USC § 3553(a)(2).  In 2003 Justice Anthony Kennedy stated, "Our resources are misspent, our punishments too severe; our sentences too long . . . the sentencing guidelines are responsible in part for the increased terms [and they] should be revised downward."[1] Ten years later, United States Attorney General Eric Holder echoed Justice Kennedy in his own speech to the ABA, saying "too many Americans go to too many prisons for far too long, and for no truly good law enforcement reason. . . ."[2] Counsel attended a sentencing

---

[1] http://www.abanow.org/2003/08/speech-by-justice-anthony-kennedy-at-aba-annual-meeting/
[2] http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html

at WSU Law School where the question was posed to the Honorable Jed Rakoff and Nancy Edmunds "How Much Time was Too Much Time?" This issue is still looming. Prison populations continue to be burdened by sentences too long for their purposes. Recognizing the purposes of sentencing are restriction, deterrence, incapacitation and rehabilitation. U.S. v. Pressley, 547 F.3rd. (6th Cir 2008). Mr. Hammoud's circumstance is one that warrants the consideration of this Honorable Court. Counsel submits that this Honorable Court should grant a downward variance for the reasons stated above and after application of the relevant sentencing factors.

**IV. APPLICATION OF THE 18 U.S.C. § 3553(a) FACTORS**

**18 USC § 3553(a)(1): Nature and Circumstances of the Offense and Fadi Hammoud's History and Characteristics**

Mr. Hammoud is a forty-six-year-old father of five. He was born in Lebanon and immigrated to the U.S. during the war. Both parents are deceased. He has twelve surviving siblings. He married Maya Makhzoum in September 2014 after a bitterly contested and devastating divorce with his first wife. The letters submitted in support of Mr. Hammoud show that he is a devout man, who is fully supported emotionally and financially by his family. Not only does his family stand beside him, but he enjoys the unwavering dedication of his wife with whom he has two young children and is now expecting a third. He has maintained a close relationship with the children of his first marriage who wants to go to medical school. His son, Hassan, speaks of his bond with his father along with his hard work and family values. This support should be considered by this Honorable Court, as

evidence suggests familial support is a significant factor in lower recidivism. See Shirley R. Klein *et. al., Inmate Family Functioning*, 46 Int'l J. Offender Therapy & Comp. Criminology 95, 99-100 (2002) ("The relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures.")

Mr. Hammoud is also known to be a charitable man (not so much in money, but of his time). In addition to working to rebuild a new life for his family, he has a history of giving his time and energy to others that are more needy than himself. His CPA, Carl Masi, describes how Mr. Hammoud has opened his doors to take disenfranchised in his culture to help them better adopt to their new surroundings. The Court may consider Mr. Hammoud's character, as reflected in the letters by those who know him, and his charitable good works. See Unites States v. Wachowiak, 412 F.Supp.2d 958 (E.D. Wisc. 2006) *aff'd* 496 F.3d 744 (7th Cir. 2007) ("The guidelines failed to consider defendant's otherwise outstanding character, as depicted in the many supportive letters... while essentially § 3553(a)(1) requires the court to consider the character of the defendant, the guidelines account only for criminal history.

**18 USC § 3553(a)(2)(A): The Requirement that the Sentence Imposed Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment for the Offense**

Mr. Hammoud is fully aware that this is a serious crime, and he must face the consequences of his actions. Because of his shame he has shielded many family and friends from the instant matter for a long period. As are reflected by his letters of support he has

made his family aware.  The letter of his wife, Maya, and sister, Fadia Moussa, point out the devotion of how he has dealt with the strain of the charges.  However, it is well known that a felony conviction wreaks havoc on a person's life.  United States v. Wulff, 758 F.2d 1121, 1125 (6th Cir. 1985) ("a felony conviction irreparably damages one's reputation.")  See generally United States v. Leon, 341 F.3d 928, 929 (9th Cir. 2003); United States v. Aguirre, 214 F.3d 1122, 1123 (9th Cir. 2000).  The collateral consequences of Mr. Hammoud's conduct, and resulting guilty plea, to a large extent reflect the seriousness of the offense and provide punishment.  He has been under indictment for years now.  He has consented to significant forfeitures and restitution in this case.  He has taken earnest steps to pay his obligation.  His reputation has been stained in his community, and his family has spent over two years awaiting the ultimate disposition in this matter.

**18 USC § 3553(a)(2)(B): Deter Criminal Conduct**

It is proper for a sentencing court to vary from the guidelines based upon evidence of a substantial likelihood that a defendant will successfully overcome the cause of the criminal behavior being punished. See United States v. Davis, 763 F.Supp. 645, 652 (D.C. Cir. 1991).  Since this offense, Mr. Hammoud has gained a very real understanding of the jeopardy he has placed himself under.  He has risked the marriage, the safety of his wife and put himself in the position of disappointing her by his absence, when she needs him most.  She is invested in a gas station in Detroit and is in the process of obtaining another.  She is now facing the real possibility of managing a business along with three children because of the very real possibility of his incarceration.

**18 USC § 3553(a)(2)(C): Protect the Public From Further Crimes of the Defendant**

Post Booker and FanFan cases have reiterated that incarceration is not always necessary to protect the public.  See United States v. Edwards, 595 F.3d 1004 (9th Cir. 2010); Unite States v. Baker, 502 F.3d 465 (6th Cir. 2007); Unites States v. Stall, 581 F.3d 276 (6th Cir. 2009) (where variances that did not provide for incarceration were held not to be unreasonable).  As noted in the PSIR, Mr. Hammoud does not have a history of felonious conduct.  The assault charges in 2007 and 2013 place him in a criminal history category of II.  Both of these cases included successful probationary periods with advisement dismissals.  While they are appropriately included for guidelines calculation counsel submits they overstate prior criminal conduct.  Counsel submits that incarceration is not necessary to protect the public from Mr. Hammoud.

**18 USC § 3553(a)(2)(D): Provide the Defendant with Needed Educational or Vocational Training, Medical Care or Other Correctional Treatment in the Most Effective Manner**

Mr. Hammoud would like to continue to be involved in real estate in some way.  His wife independently has significant funds and with his input has been buying and selling commercial and residential real estate.  Upon release he would like to do more and it will not require licensure. It is expected that because of his felony conviction he will have great difficulty or be precluded from being involved in mortgage brokerage or real estate brokerage/sales licensing.  This would probably be the most viable for Defendant to gather sufficient funds for restitution and start to rebuild a life for himself and his family.

**18 USC § 3553(a)(3) and (4): Kinds of Sentences Available and the Sentencing Range Established By the Federal Sentencing Guidelines**

Mr. Hammoud's advisory sentencing guideline range is 37 to 46 months. Without a variance, this Honorable Court may sentence Mr. Hammoud to (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment. USSG § 5C1.1(d).

There is no statutory mandatory minimum term of incarceration in this case; therefore, if this Honorable Court finds it appropriate, it may vary from the guidelines and impose a sentence that does not require incarceration.

**18 USC § 3553(a)(5): Any Pertinent Policy Statement Issued by the Sentencing Commission**

Counsel is not aware of any relevant policy statements.

**18 USC § 3553(a)(6): The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

There are no codefendants in this matter. Mr. Mukhtal has not been listed as a codefendant in this matter.

**18 USC § 3553(a)(7): The Need to Provide Restitution to Any Victims**

Counsel adopts the position of probation in paragraph 83 of the PSIR. Mr. Hammoud would like to buy and sell real estate. To do so this may require funding from

traditional sources as well as hard money lenders if necessary.  The only exception, therefore, would be to allow financing in the ordinary course of business upon presentation of documentation to probation or to his supervised release officer.

**V. CONCLUSION**

"The makers of the sentencing guidelines have succeeded only in contributing to the making of law of punishment that shows obstinately little concern for the personhood of offenders . . . a law that tends to treat offenders as something closer to animals than humans, and that has correspondingly sought, more and more frequently, simply to lock them away."  See James Q. Whitman, <u>Harsh Justice</u>, Oxford Press, 2003 at 223 note 72.

Given the foregoing facts and circumstances, defense counsel requests this Honorable Court to vary downward from the guidelines and fashion a sentence for Fadi Hammoud that is sufficient, but not greater than necessary to satisfy the requirements of 18 USC § 3553(a).

    Respectfully Submitted,

    JAMES C. THOMAS, P.C.

    By: /S/ James C. Thomas
    James C. Thomas P23801
    Counsel for Defendant, Fadi Hammoud
    12900 Hall Road, Suite 350
    Sterling Heights, MI 48313
    jthomas@orlaw.com

DATED: May 15, 2017

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

      /S/ James C. Thomas
James C. Thomas